THE NATIONAL EXCHANGE BANK OF AUGUSTA *vs.* SIBLEY *et al.*

1. If directors of a corporation knowingly issued illegal and spurious stock beyond that which they were authorized by the charter to issue, and obtained a loan upon such stock as collateral, representing that it was good and valuable, an action of deceit would lie in favor of the lender against the directors as individuals, without first suing the corporation upon its note given for the amount loaned.

(*a.*) As a general proposition, a person to whom stock is hypothecated as collateral security for a debt, will not thereby become a stockholder and member of the corporation, with all the powers and privileges incident thereto in the management of the affairs of the company. He holds the stock for a special purpose only, the owner not parting with the general property; the holder is a trustee for the purpose of carrying into effect the objects for which the hypothecation was made; and if it be a sale at all, it is not absolute but defeasible.

(*b.*) Whether, for stock illegally issued by directors of a corporation in excess of the amount authorized by the charter, the corporation itself or the directors individually are liable, is not decided.

2. It does not appear, from the pleadings, that the plaintiff in this case has been negligent in discovering the true character of the stock hypothecated; nor can this be inferred from mere lapse of

time, even in a contest between different classes of stockholders, or stockholders and the corporation, involving the validity of the stock, if suit be brought within the time prescribed by the statute of limitations.

3. The fact that one receiving stock as a hypothecation for a loan to a corporation had dealings with the corporation after such stock was hypothecated, did not estop him from bringing an action of deceit against the persons composing the board of directors, based upon their procuring the loan upon the pledge of worthless stock.

4. There may be damage without injury, where there has been no violation of any right of the party complaining, or no breach of duty to him, but where there has been a breach of duty or violation of right as to him, the doctrine of *damnum absque injuria* does not apply. In such cases, if no actual damage is shown, nominal damages may be recovered.

5. An action of deceit against directors of a corporation, as individuals, does not call in question the corporate existence of the company; nor is any such issue involved in this case. But if necessary, the plaintiff would not be estopped from setting forth acts which would involve the destruction of rights claimed under the charter, it being no member thereof.

November 27, 1883.

Corporations. Action. Stock. Parties. Pawns. Before Judge RONEY. Richmond Superior Court. October Adjourned Term, 1882.

Reported in the decision.

FOSTER & LAMAR, for plaintiff in error.

FRANK H. MILLER; BARNES & CUMMING, for defendants.

HALL, Justice.

This was an action on the case for deceit, brought against Joseph Sibley, W. F. Herring, Charles H. Phinizy, and several others; but none of them being served except the above named defendants, the suit was discontinued as to all except them. The declaration sets forth, in substance, that on the 11th of September, 1879, the defendants were directors of the Augusta and Port Royal Compress Company, with the duty to manage its business, and

to authorize the issue of genuine, paid up and legal stock therein, to borrow money therefor, and deposit the genuine stock thereof as collateral security. That on said day defendants desired to borrow $2,500 from plaintiff, and offered to deposit scrip for 100 shares of genuine, legal and fully paid up stock of said Augusta and Port Royal Compress Company, of the par value of $100 per share, as collateral—representing said collateral to be genuine, legal, and fully paid up, of the par value of $100, though knowing it to be spurious and unlawful, and that plaintiff believed it to be genuine; plaintiff loaned said sum on the faith of the said collateral, and defendants issued scrip for 100 shares. That said note was renewed at various times, and at each renewal the scrip was left with plaintiff as collateral. That the debt became due August 18, 1881, and defendants again renewed the same, depositing the scrip as to which the said representation had been made. Induced by said representations and defendants' acts and deeds, and laboring under the delusion that the stock was genuine, legal and paid up, and as represented to be by defendants, the plaintiff renewed the loan and took the collateral. That, as a fact, the scrip represented unlawful, unauthorized, illegal and spurious stock, attempted to be created by defendants in excess of the lawful capital of the Augusta and Port Royal Compress Company, on which nothing had been paid in, all of which was known to defendants, but of which plaintiff was ignorant until November, 1881. That in the premises, defendants falsely, fraudulently, deceitfully and recklessly deceived and injured plaintiff, concealing the facts aforesaid and the spuriousness and worthlessness of the scrip, though knowing that plaintiff thought the collateral 'was ample security and representing genuine stock. That neither the company nor either of the defendants have paid any part of said debt, though due, since November, 1881. That at the time the debt became due, since and now, the Augusta

and Port Royal Compress Company was and is insolvent, and has wholly failed to pay said debt.

To this declaration the defendants demurred, upon the following grounds ·

(1.) That "no such action can be maintained until the plaintiff has obtained a judgment establishing the validity of his debt against the corporation, and a return of *nulla bona* thereon."

(2.) That it appears from plaintiff's own showing that it is a stockholder of the corporation, and has no remedy at law against the directors without making the corporation a party.

(3.) That no sufficient reason is alleged as to why the plaintiff, from the 11th day of September, 1879, upon which it received the scrip of the Augusta and Port Royal Compress Company, was ignorant, until November, 1881, of the alleged character of the stock held by it,—each defendant insisting that the particular acts upon which a liability is claimed to exist and rest upon this defendant should be set out, so that he can be put upon notice.

(4.) That " it appears that plaintiff, having dealt with the Augusta and Port Royal Compress Company as a corporation, are estopped from going behind the note received by them, it appearing that said note was received after the day the scrip issued to it, the scrip being dated September 11, 1879."

(5.) That "plaintiff's aforesaid declaration shows that the matters complained of constitute, at most, *damnum absque injuria*, for plaintiff's aforesaid declaration avers that, at the time said debt became due, since and now, the said Augusta and Port Royal Compress Company was and is insolvent. Wherefore no loss could accrue to plaintiff by reason of the alleged spuriousness of the stock ; for the stock, the corporation being insolvent, would be equally worthless, whether spurious or genuine."

(6.) That the plaintiff, by this action for deceit against the directors of the Augusta and Port Royal Compress

Company, for the issue of spurious and unlawful stock of the corporation in excess of the amount authorized by its charter, for the purpose of hypothecating the same as collateral security for money borrowed, was denying the corporate existence of the Augusta and Port Royal Compress Company, and that plaintiff was estopped from going behind the note received by it (the plaintiff).

The court sustained this demurrer upon each of the grounds therein taken, and gave judgment dismissing plaintiff's suit; and thereupon it excepted and brought the case here, and assigns error, not only to the entire judgment sustaining the demurrer, but to the ruling upon each of the grounds thereof separately and distinctly, and this assignment makes the case for our determination.

1. It is our opinion that not one of these grounds of demurrer is well taken. · This results, as we think, from an entire misconception of the nature and purpose of the plaintiff's action. The liability sought to be enforced is not secondary and collateral, dependent upon that of the corporation of which defendants are and were directors, but is original and primary against them as individuals, and grows out of their personal wrong. In this suit, there is no attempt to hold the corporation liable. The entire object of the suit is to redress the wrong alleged to have been committed by the defendants upon the plaintiff, in inducing it to part with its money upon a security known to them to be worthless, and which they represented as valuable and good. "It is settled law," said Parke, B., in Thorn vs. Bigland, 8 Exch., 731, "that independently of duty, no action will lie for a misrepresentation, unless the party making it knows it to be untrue, and makes it with a fraudulent intention to induce another to act on the faith of it, and to alter his position to his damage. This appears from the cases of Collins vs. Evans, 5 Q. B., 820 (48 E. C. L. R.), and Ormrod vs. Huth, 14 M. & W., 651, which have perfectly settled the law on that point."

In Wilde vs. Gibson, 1 H. L. Cas. 605, 633, Lord Camp-

bell declared, " If by 'fraud' is meant an intention to injure the party to whom the representation is made, or to benefit the party who makes the representation, there may be an action of deceit without fraud; but there must be falsehood; there must be an assertion of that which the party making it knows to be untrue; the *scienter* must either be expressly alleged or there must be an allegation that is tantamount to the *scienter* of the fraudulent representation, and this allegation must be proved at the trial;" and he adds, " If that falsehood is stated without any view of benefiting the person who states the falsehood, or of injuring the person to whom the falsehood is stated, in one sense of the word you may say it is not fraudulent, but it is a breach of moral obligation, it is telling a lie, *and if a lie is told whereby a third person is prejudiced*, although there may be no profit to the person who tells it, and although no injury is intended to the party to whom it is told, but a benefit to a third person, *it is clearly a breach of moral obligation*, and is a fraud which will support an action of deceit." Broom, in his Commentaries on the Common Law, pp. 340, 341, says, " The proposition here printed in italics seems to be altogether unimpeachable, and indicates the nature of the fallacy into which those have fallen who contend that legal fraud may exist without any admixture of moral fraud." By our Code, §2634, a misrepresentation made with design to deceive, or which actually deceives a party, though the person making it is not aware that the statement was false, is a fraud which will avoid. Misrepresentation of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitutes legal fraud. Code, §3174.

A fraudulent or reckless representation of a fact as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood,

v 71–47

and concealment of a fact, if done in such a manner as to deceive and mislead, will give a right of action for deceit. Code, §2958.

The relation which the defendants bore to this corporation, being its stockholders and directors, and being directly benefited with their co-corporators by this transaction, prevents them from sheltering themselves under the provision of our Code, §2959, which requires representations to obtain credit for another to be in writing, in order to charge the party making them in an action of deceit.

The declaration in this case is skilfully and accurately framed, and contains every requirement of the law.

2. As a general proposition, we are not prepared to hold that a party to whom stock in a corporation is hypothecated as collateral security for a debt thereby becomes a stockholder in and member of that corporation, with all the powers and privileges of such stockholder and corporator in the management of the affairs of the company. He holds it for a special purpose only; the owner does not part with the general property, and the holder is simply a trustee to carry into effect the objects for which the hypothecation is made. Code, §§2788, 2177; 43 *Ga.*, 415. He parts with the title temporarily; he has the right to redeem at any time by paying the debt; if a sale at all, it is not absolute, but defeasible only. This dispenses with the necessity of determining the relation between the corporation itself and its directors as to their respective liabilities for stock issued in excess of the amount authorized by its charter. We might have little difficulty, however, in holding, were the question material, that the corporation was not liable for such stock, but that the directors in their individual characters were. We do not decide the point, as it is unnecessary, but refer to the following cases which seem to cover it: 105 U. S. R., 143, 148; 13 N. Y., 599; 34 *Ib.*, 30; 18 Wall., 233; L. R., 4 Ch. App., 682, note.

3. What has just been said goes far to dispose of the next

ground of demurrer.   It does not appear from the pleadings, that the plaintiff has been negligent in discovering the true character of the stock hypothecated, nor are we satisfied that this can be inferred from mere lapse of time, even in a contest between different classes of stockholders, or stockholders and the corporation, involving the validity of stock, where it appears that suit was brought within the period prescribed by the statute of limitations.   *City Bank of Macon vs. Bartlett et al.*, determined at the present term ; Thompson on Liability of Officers and Agents of Corp., 310, 318, and cases cited in text and notes.

4. We do not clearly perceive how the plaintiff, receiving stock as a hypothecation for its loan, having dealings with the corporation after the date when the stock is thus hypothecated, can be thereby estopped from prosecuting this suit against the persons composing its board of directors, for their alleged deceit in procuring the loan upon the pledge of worthless stock.

This suit, as we have seen, was not upon the note made by the corporation to the plaintiff, nor was it a consequence of the failure to realize in a suit upon that note, but was for the deceit practiced by the defendants in relation to the pledge of stock upon which the plaintiff's money was obtained.   It arises from conduct outside of the note itself, but which led to its acceptance ; it is for the violation of a private duty, flowing from relations created by contract, and when this breach of duty is accompanied with damage, a right of action is given.   Code, §2954, and cases cited thereunder.

5. That there may be damage without injury, where there has been no violation of any right of the party complaining, or no breach of duty to him, is perfectly well settled, but that there can be a breach of duty or a violation of right unaccompanied with damage, is not so easily comprehended.   In Webb *vs.* The Portland Manufacturing Company, 3 Sumner, 189, Mr. Justice Story, speaking upon

this subject, said: "I can very well understand that no action lies in the case where there is *damnum absque injuria ;* that is, where there is a damage done without any wrong or violation of any right of the plaintiff. But I am not able to understand how it can correctly be said, in a legal sense, that an action will not lie even in a case of a wrong or violation of a right, unless it is followed by some perceptible damage which can be established as a matter of fact; in other words, that *injuria sine damno* is not actionable. On the contrary, from my earliest reading, I have considered it laid up among the very elements of the common law, that wherever there is a wrong, there is a remedy to redress it; that every injury imports a damage in the nature of it; and if no other damage is established, the party injured is entitled to a verdict for nominal damages. " " Actual perceptible damage, " he continues, " is not indispensable as the foundation of an action. The law tolerates no further inquiry than whether there has been the violation of a right. If so, the party injured is entitled to maintain his action for nominal damages in vindication of his right." Most of the authorities bearing upon the question are cited and considered in this able and exhaustive judgment. The doctrine is very fully and accurately discussed and illustrated by many examples in Broom's Comm. throughout the 3d Ch. of his 1st Book, which treats of "the nature of rights enforceable by action," passim, pp. 74 to 108 inclusive.

6. Nor are we able to perceive how this suit against the persons, in their individual characters, for a wrong alleged to have been done by them to the plaintiff, can call in question the corporate existence of the Augusta and Port Royal Cotton Compress Company. There is no such issue involved in the suit under consideration. To that suit the corporation is an utter stranger. It cannot be affected by any judgment that may be therein rendered. But if necessary to the maintenance of its suit, the plaintiff could not be

estopped from setting forth acts which would involve the destruction of rights claimed under -the charter, since it is no member of the corporation.

Judgment reversed.