### James *et al.* v. Crosthwait

1. While a bank may, without requiring the deposit of any money, give to a customer a valid credit upon its books in a stated amount, to be used by him for a special and limited purpose only, this cannot be accomplished merely by entering the credit in the customer's favor and immediately cancelling it by another entry predicated upon the fact that the customer is required to draw at once a check for the full amount of such credit, the result of which is to deprive the customer of any right at all to draw further upon the bank so far as this particular credit is concerned. Such a transaction amounts to giving such customer no credit whatever.
2. An entry upon a "pass-book" purporting to show that the owner of the book has credit in a bank for a specified balance

v 97-43

is not, of course, conclusive or binding upon the bank, but where a banker issued and delivered such a book containing an entry of this kind which was *ab initio* false; and where after this had been done, a third person who had seen the book applied to the banker for information as to the genuineness and accuracy of the apparent credit, at the same time disclosing his reasons for making the inquiry, and the banker, while expressly declining to give, in terms, the information thus sought, did by concealing the truth, or by other means, induce the inquirer to believe the entry in the book was true and correct, and in consequence of such belief to make with the owner of the book a contract whereby such inquirer, though exercising due care in the premises, was defrauded and suffered a loss, the banker, if from the particular circumstances of the case he was under an obligation to communicate to the inquirer the exact truth of the matter, was, within proper limits, liable in damages to the latter on account of such loss. Whether or not in a given case such an obligation on the part of the banker existed was a question of fact for determination by the jury in the light of all the surrounding circumstances.

3. Although it may not, upon the trial of a case of this kind, appear that in entering the credit and issuing the "pass-book" there was originally any intention to thereby mislead the plaintiff, nevertheless, if he was an employee of the owner of the book in a given business to which the entry of the credit directly related, and contemplated, on the faith of such entry, purchasing an interest in that business, and at the time of making the inquiry above mentioned, informed the banker of all these facts, thus making it apparent to the latter that it was essential to the inquirer's protection for him to know whether or not the credit was real and for the amount stated, a finding that the banker was under the duty of revealing the whole truth was not unwarranted; and if because of his failure to do so and of other conduct on his part the plaintiff was misled as to the truth, and in consequence made the contemplated purchase, whereby he sustained a loss less in amount than that represented by the false credit, the banker was liable to him for the same.

4. The evidence in this case was sufficient to warrant the finding in the plaintiff's favor for the amount stated in the verdict; there was no material error, if any at all, in admitting, in rejecting or in refusing to rule out evidence; the requests to charge, so far as legal and appropriate, were covered by the charge given, which was free from error, and which, as a whole fully and fairly presented the law of the case.

January 27, 1896.

Complaint for damages.     Before Judge Van Epps.
City court of Atlanta.     July term, 1895.

*Hillyer, Alexander & Lambdin*, for plaintiffs in error.
*R. J. Jordan* and *Goodwin & Westmoreland*, contra.

SIMMONS, Chief Justice.

H. C. Crosthwait sued J. H. & A. L. James, a banking
partnership, and J. H. James, individually, alleging that
they had damaged him in the sum of $2,675, as follows:
About May 20, 1892, plaintiff was employed as book-
keeper by David Lamar, president of the International
Railway & Employees Accident Association, being re-
quired, in lieu of giving bond, to deposit $1,000 in defend-
ant's bank as security, the same not to be subject to check.
Lamar represented to plaintiff that the association had a
paid in capital of $6,500, and after making certain charges
against that sum, an apparent balance of $4,146.23 was
left.   Lamar also furnished plaintiff with a pass-book from
defendant's bank, which showed a credit of the last named
sum in the bank in favor of the association.   The business
of the association seemed to be good, and plaintiff inquired
of the secretary if any stock was for sale.   In a day or two
Lamar came to him and offered to sell him an interest of
one third for $2,500.   Plaintiff called on J. H. James,
informed him of the contemplated purchase, and asked him
if the amount apparently to the credit of the association
was correct.   James declined to give any statement as to
the balance then in bank, but referred the plaintiff to
Lamar, saying, "You go to Lamar.   He will tell you just
how it is.   You put yourself in his hands; he will treat you
right and make you money."   Relying on this statement,
plaintiff bought, and paid $2,500 for, a one third interest
in the association, but in a few days, Lamar becoming en-
gaged in a controversy and being arrested, plaintiff grew
suspicious, and called on James and asked him, "How much
money has the association in the bank?"   James at first

hesitated, but finally said, "The association has no money in the bank; it is overdrawn about $200." In response to further questions, James stated that the money had not been in the bank, but the credit on the book was allowed at the instance of Lamar, who at the same time was required to give a check against the apparent amount. The representations made by James, it is alleged, were false and fraudulent, were made to deceive some one, and did deceive plaintiff; because he relied and acted on them, and but for them he would not have paid the money to Lamar for the interest he bought. He discovered their falsity in July, 1892. He avers that there was collusion between James and Lamar to deceive him and defraud him out of the sum he paid. The one third interest he purchased was absolutely worthless, and this was known to James when he made the representation before alleged; which representation was made in bad faith and with·intent to mislead plaintiff to his damage. By referring plaintiff to Lamar for further information, James vouched for the truth of Lamar's statements; and Lamar when approached concurred in the false statements of James. They conspired for the purpose of defrauding plaintiff as alleged, etc.

The jury found for the plaintiff $2,215.25. Defendants' motion for a new trial was overruled, and they excepted.

There is some conflict in the evidence, but accepting as we must that version of the facts which the jury have found to be true, there can be no doubt that the recovery in the plaintiff's favor was warranted. According to the evidence of the defendant J. H. James, the credit entered by him on the "pass-book" was merely a fictitious credit. A banker may, it is true, without requiring the deposit of any money, give to a customer a valid credit upon his books in a stated amount, to be used for a special and limited purpose only; but this cannot be accomplished by entering the credit in the customer's favor and immediately cancelling

it by another entry, predicated upon the fact that the customer is required to draw at once a check for the full amount.of the credit, thus depriving the customer of any right at all to draw further upon the bank so far as the particular credit is concerned. Such a transaction amounts to giving the customer no credit whatever. It is also true that an entry upon a "pass-book" purporting to show that the owner of the book has credit in the bank for a specified balance is not conclusive or binding upon the bank; and that a banker, when inquired of by a third person as to the amount which a customer has to his credit, is ordinarily under no duty to give any information on the subject. Where, however, the banker has issued and delivered to a customer a deposit book containing a credit in his favor which is *ab initio* false, and a third person who has seen the book comes to him and inquires as to the truth of the apparent credit, explaining at the same time that his reason for doing so is that he contemplates purchasing an interest in the particular business to which the credit relates, a very different case is presented. We think the court properly submitted to the jury whether under the circumstances James was under any obligation to communicate to the plaintiff any more than he did communicate, or not to have said what he did say to him; and we think the jury were warranted in finding that his conduct, under the circumstances, amounted to a fraud which would entitle the plaintiff to recover. Here, in the first instance, as the testimony of James himself shows, was a false statement made by him for the purpose of deceiving others as to the amount deposited in the bank to the credit of Lamar's "association," and of inducing such persons to enter into business relations with the "association." It was not necessary, in order to entitle the plaintiff to recover for the deceit, that the representation should have been made directly to him. One who wilfully makes false representations to be fraudulently used by another as an inducement to a third person

to enter into a contract with the party repeating them, is as much guilty of deceit as the latter, and is equally liable to the party deceived. *Cheney* v. *Powell*, 88 *Ga.* 634. And see notes to Pasley *v.* Freeman, 2 Smith's Leading Cases (9 Am. ed. from 9 Eng. ed., 1889), p. 1334; Barry *v.* Croskey, 2 Johnson & Hemming (Eng. Chan. Rep.), 1; Watson *v.* Crandall, 78 Mo. 583. The main purpose in view in making the false entry appears to have been to enable Lamar to exhibit it to certain railroad engineers, who were to aid in securing business for the "association," and who were to use it as a basis of representations to be made by them as to the solvency and standing of the "association"; and it was argued that no liability to the plaintiff resulted, since the representation was not intended for him, and the effect it was claimed to have had upon the plaintiff was not within the contemplation of the defendant at the time the entry was made. When approached by the plaintiff, however, and inquired of as to the truth of the entry, James was made aware that the representation would not be confined in its operation to the purpose originally intended, but that its effect would probably be to mislead the plaintiff and induce him to invest his money in the purchase of an interest in the business from Lamar, unless something were said or done to prevent its having this effect. So that whether James originally intended the representation to mislead the plaintiff or not, the jury might well conclude that when he was brought face to face with the plaintiff, and given to understand that it was essential to the latter's protection to know whether the credit was real for the amount stated, it was his duty to reveal the truth, and that the failure to do so was in effect a direct misrepresentation to the plaintiff. Whether or not such a duty existed on his part, under all the circumstances, was a question for the jury. (Code, §3175.)

It was argued that James did all that could be required of him when he referred the plaintiff to Lamar, and that

the presumption would be that Lamar would tell the truth. Where two persons unite in putting forth a false statement for the purpose of deceiving and misleading others, we think it would be going very far to say that one of them, when approached by a third person as to the truth of the statement, has a right to assume that the inquirer, if referred to the other party to the falsehood, will get the truth from him. So far from James having a right to assume that the plaintiff would get the truth by going to Lamar, the contrary assumption would have been very much more consistent with the circumstances. Yet, according to the plaintiff's evidence, James did not content himself with referring the plaintiff, for the truth of his own misrepresentation, to the man at whose instance he had made it, but went so far as to vouch for the latter, assuring the plaintiff that Lamar would tell him just how it was, and advised him to put himself in Lamar's hands, he would treat him right and make him money. Under this state of facts we cannot say that there is nothing to warrant an inference that James intended to deceive and defraud the plaintiff. Fraud being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence (Code §2751), and it is peculiarly the province of the jury to pass on these circumstances.

It appears further that the plaintiff was in fact deceived and defrauded. He returned to Lamar and asked him why he supposed James did not answer his question, and Lamar said he supposed it was because the plaintiff was a comparative stranger to James, but said "it was not because the money was not in the bank." The plaintiff then raised the money to purchase an interest in the business from Lamar, and paid him $2,500 for it. He testified that he did this upon the faith of the entry in the deposit book, in connection with the conduct and statements of James at the interview above referred to. It soon after turned out that the interest he had purchased was practically worth-

less, and that his loss amounted fully to the sum found in his favor by the jury.

It was not necessary, in order for the plaintiff to recover, that the deceit in question should have been the sole inducement which led him to make the investment. It was sufficient if it influenced his conduct materially. Kerr, Fraud and Mistake, 74; 1 Jaggard, Torts, 589, 593. Nor was it necessary that the defendant should be benefited by the deception. *National Exchange Bank* v. *Sibley*, 71 *Ga.* 731; 1 Jaggard, Torts, 562. Nor is a recovery precluded by the fact that James was not informed as to the extent of the proposed investment. In the cases referred to on this subject by the plaintiff (*Slade* v. *Little*, 20 *Ga.* 371, *Hopkins* v. *Cooper*, 28 *Ga.* 392, *Glover* v. *Townsend*, 30 *Ga.* 90), there was merely a general representation as to the credit of a person, without any indication in the representation or the circumstances, as to the extent to which the credit might safely go. Here there was a representation that a specified sum stood to the credit of the "association" in the defendants' bank; and the amount of the recovery in this action is considerably less than that amount.

We do not deem it necessary to deal specifically with the numerous grounds of the motion for a new trial. What we have said covers the main and controlling questions made in the record. Several of the grounds relating to the admission and rejection of testimony, and to the charge of the court, are too vague, general and indefinite to be considered, it not appearing what the testimony referred to was, or what particular portion of the charge is complained of. So far as we can discover from the motion, there was no material error in rejecting or in refusing to rule out evidence. The requests to charge, so far as legal and pertinent, were covered by the charge given, which was free from error, and which as a whole fully and ably presented the law of the case. This is the second verdict in favor of

the plaintiff, and under the evidence in the record, we are constrained to hold that the court did not err in refusing to set it aside.                    · *Judgment affirmed.*