*Attorney General*, for appellant.

*B. J. Lewis*, for appellee.

---

## JACOB BURLESON'S HEIRS v. JOHN BURLESON.

. This case distinguishable from the cases of Hunt's heirs v. Robinson's heirs, (1 Tex. R. 748,) and Robbins' heirs v. Robbins' heirs. (3 Id. 496.)

It is no objection to the validity of a bond to convey, dated after the repeal of the restraint against alienation within six years, that there had been a previous agreement to the same effect, before the repeal, in pursuance of which the bond was executed.

Two brothers, John and Jacob, emigrated to Texas in 1832, and it was then agreed between them and their father, who had preceded them, that the headright of John should be located in a certain place which had been selected by the father, and should be divided equally between the brothers, as soon as the title should be obtained ; and that the headright of Jacob should, when obtained, be divided in the same way. In 1834, after the issue of title to John, and the repeal of the restraint against alienation, contained in the law of 1832, in cases where titles had been obtained, John executed to Jacob, in pursuance of their former agreement, a bond for title, specifying the boundaries. In the meantime Jacob went into possession and made valuable improvements and continued in peaceable possession until his death, in 1839. After his death his heirs remained in possession until about the commencement of this suit, (Nov. 19, 1850,) when they were ejected by John. After the death of Jacob, who had neglected to obtain his headright, John obtained a certificate in behalf of his heirs, and procured it to be located and patented, claiming the one-half of it, under the agreements of 1832 and 1834. The heirs of Jacob brought suit to recover the possession and to be quieted in their title to the one-half of John's headright, praying also that the one-half of their father's headright might be adjudicated to John. *Held*, That the suit was well brought.

Appeal from Travis. This suit was brought (November 19th, 1850,) to recover title, and be quieted in the possession,

to one half league of land. The petition set out that on the 12th day of May, 1834, John Burleson and Rebecca S. Burleson, his wife, executed and delivered to Jacob Burleson, said deceased, under whom petitioners claimed, an agreement in writing, under their seals, as follows, viz:

"State of Coahuila and Texas and jurisdiction of Austin. "Know all men by these presents, that I, John Burleson and "Rebecca Burleson, do, for value received, transfer all our "right, title and interest of one half league of land to Jacob "Burleson, it being the half of a league lying on the east side "of the Colorado, being saved by John Burleson, being the "upper half of the league, just splitting the league with a "certain line, that has been run the length of a quarter of a "league. We do bind ourselves, our heirs and administra- "tors, to make unto Jacob Burleson, his heirs and adminis- "trators, a good and sufficient deed, so soon as we obtain one "from the government. Given under our hands and seals, this "12th day of May, 1834.

    ("Signed,)    "JOHN BURLESON,     [L. S.]
             "REBECCA S. BURLESON." [L. S.]

The petition stated further, that there was an agreement between John and Jacob Burleson, in 1832, when John Burleson located the land in question, by which it was to be divided; and that the headright of Jacob Burleson, when located, should be divided between the parties; and that the bond aforesaid was executed in pursuance of said agreement; that Jacob Burleson, on or about the date of the covenant recited, went into the possession of the half league of land in question, and made valuable improvements thereon, and continued in the peaceable possession until his death in 1839, and that his heirs continued in the peaceable possession and enjoyment of the same since his death, until forcibly ejected by the defendant, John Burleson, about the time of the commencement of this suit; that John Burleson always acknowledged the right of the said Jacob and his heirs, and that after the death of the said Jacob, John caused his, the said Jacob's, headright to be

located and patented, and always claimed the half thereof. It was alleged, further, that John Burleson had received in 1832, title to the land sued for. The petition prayed that title be decreed to the defendant, John Burleson, for the half of the headright league of Jacob Burleson, and that title to the half league in question be decreed petitioners, and that they be quieted in the possession of the same. There was a demurrer to the petition, which was sustained.

*Oldham & Marshall*, for appellants. I. The defendant below, in support of his demurrer, relied upon the case of Robbins' heirs v. Robbins' heirs. (3 Tex. R. 496.) With due respect for the Court, I ask a reconsideration of that case so far as it assumes that the 36th Article, Decree No. 272, contains any prohibition whatever against alienation.

A law which simply declares that a person shall possess a right which he would possess without the law, cannot, we conceive, by any fair rule of construction, be regarded as a prohibition of other rights of a similar nature, not enumerated.

But be this as it may, the law cannot be construed to contain an implied prohibition against alienation, before they should have obtained titles, because before receiving titles they had no lands to alienate. Upon receiving a title, the settler acquired with it the right to sell the land. Now, I cannot possibly conceive, how such a law can be construed into a prohibition against a contract to sell at that time.

Nor is it believed that the case of Hunt's heirs v. Robinson's heirs, (1 Tex. R. 748,) conflicts with this view of the question.

II. We do not consider it important to discuss the question, whether the contract, if void at the time it was made, as being in contravention of law, was subject to confirmation, after the removal of the prohibition. We will merely say that it seems to us that it was in its very nature a new contract, made after the prohibition was repealed. But the objection is obviated in this case, by the averment that the defendant did have a title to the land, at the time the contract was made.

III. It was urged in the Court below, in support of the demurrer, that the contract on the part of Jacob Burleson was not set out, nor the lands agreed to be conveyed by him, specified, so as to carry the same out by decree; and further, that the contract, on his part, was in violation of the prohibition against alienation. To this it may be answered, the covenants of the parties were independent, and it was wholly unnecessary to set out more than the contract of the defendant, which shows that it was for value received. If the contract, on the part of Jacob Burleson, had not been performed, the defendant should have set it out by plea in reconvention, and claimed judgment. (Pordage v. Cole, 1 Saund. R., and note; Robb v. Montgomery, 20 Johns. R. 15.)

All the averments, as to the contract on the part of Jacob Burleson, were surplusage; and having been made, do not vitiate the petition.

IV. The petition alleges that Jacob Burleson entered into the possession of the land claimed, about the time of the making of the contract, and that he, his widow and heirs and her administrators, have remained in the possession until about the time of the bringing of this suit, when the defendant forcibly took possession.

It is believed that the facts of the case truly need no argument in support of the equity claimed. (Means v. Robinson, 7 Tex. R. 502; Hunt v. Turner, 9 Id. 385; Hunt's heirs v. Robinson's heirs, 1 Id. 748.)

*J. Lee*, also, for appellants.

*A. J. Hamilton*, for appellee. I. The contract was clearly contrary to existing law, and void. The question is no way distinguishable, upon principle, from those settled in the cases of Hunt's heirs v. Robinson's heirs, (1 Tex. R. 748,) and the heirs of Robbins v. the heirs of Robbins, (3 Id. 496.)

The bond, executed by the appellee in 1834, does not change or vary the character of the original contract, any more than

it changes its legality.  In fact it is declared, in the appellants' petition, to be made in pursuance of the original agreement, and I suppose was intended merely to prove the terms of a previous parol agreement ; for it is wanting in all the characteristics of a written contract, or contract required by the Civil Law, to be in writing.

II.  The plaintiffs below were not aided by the allegation in their petition of uninterrupted possession under the contract, coupled with improvements.  The same facts existed on the part of the plaintiffs, in the case of Hunt's heirs v. Robinson's heirs.  In this case, it is alleged that the appellee, at some period subsequent to the contract, located and claimed as his own, one-half of the headright of Jacob Burleson.  This would not avail the appellants, if it were stated (as it is not) that title had been conveyed by Jacob or his heirs to John, for a half of his headright.  A part performance of an illegal contract would not change the vicious character of what remained to be done.

It is certain, however, that John Burleson could not under the laws of Coahuila and Texas, have located and obtained title to the half of Jacob Burleson's headright.  No law authorizing a transfer of colonial right, so as to vest title in the vendee, by action of the officers of government, was known.

The contract was, then, according to its terms as stated in appellants' petition, opposed to the policy and express provisions of the law, and void.   (Hunt's heirs v. Robinson's heirs, 1 Tex. R. 748 ; Robbins' heirs v. Robbins' heirs, 3 Tex. R. 496 ; 1 Pothier. 62 ; 5 Part. Tit. 11, L. 28 ; Story, Cont. 404 to 410 ; 5 Geo. R. 404 ; 6 Id. 417; 2 Story, Eq. 5 to 12 ; 13 Ves. 581 ; 11 Id. 535.)   The parties were prohibited by law, and had no capacity to contract.   (10 Peters, 360.)

III.  The fact that the parties never changed their opinion of the contract, from the time it was made, was not the creation of a new contract, or a ratification of the old one, upon a new consideration.

It might have resulted from the same ignorance of the law,

that led them to make it originally. If mere acquiescence in an illegal contract, by the parties to it, would avoid the illegality, then, in every instance where the government is to be the sufferer from the illegality, she would be remediless.

IV. The case is widely different from the case of Hunt v. Turner, in 9 Tex. R. 385. In the last case, the plaintiffs sought to recover possession of the headright of their ancestor, from those who held under his grantee, and that too, after they had placed it out of their own power to restore the possession of the land which had been received in exchange.

The present suit is to compel the specific performance of a contract made in violation of law, as was the case of Hunt's heirs v. Robinson's heirs. It is shown, from the prayer in the petition, that no title ever passed from Jacob Burleson or his heirs to John Burleson, for any land as an equivalant for the land sued for.

It is said by this Court, in the case of Hunt v. Turner, that, in the case of Hunt's heirs v. Robinson's heirs, " the decision " was based solely on the ground that the bond for title was " forbidden by law." The right to the legal title is the only matter in issue here, and will be determined upon the same rule of law.

V. But it is submitted, that, if there were equities to be considered in the case at bar, they could only avail the party appellant, by presenting the fact that equity would be satisfied with nothing less than what they pray for, as in the case of Dugan's heirs v. Colville's heirs, (8 Tex. R.,) where the parol sale was enforced notwithstanding the statute of-frauds, it being impracticable to place the parties in *statu quo*.

LIPSCOMB, J. We propose to consider the correctness of the judgment, in sustaining the demurrer. If the facts, alleged constitute a good cause of action, the demurrer ought to have been overruled.

At the date of the defendant's covenant, 12th May, 1834, all the laws prohibiting alienation of land to which title had

been acquired, had been repealed. It was, therefore, not subject to the same objections, as the contracts in the case of Robinson's heirs v. Hunt's heirs, and the case of Robbins' heirs v. Robbins' heirs. In the last case cited, the contract of sale was for land to which the title had not, at the date of the contract, been acquired. It is however insisted, by the counsel for the defendant, that the covenant is void, for want of a good consideration ; that it was founded on the previous agreement of 1832, when the inhibition, by the laws of Coahuila and Texas, to a sale of the land, existed in force ; and that it was also void, for want of mutuality, as Jacob Burleson had no land of the description referred to, to divide with the defendant.

As to the first objection, we believe that, although there may have been a previous agreement for a division of, or sale of, a part of the land, that was void and could not have been sustained, on the ground that such agreement, when entered into, was in contravention of law, it would interpose no ground of objection to a covenant for the sale of the same land, between the same parties, after the legal impediment to the sale had been removed.

The second ground, a want of mutuality, is worthy of more consideration ; and, although the covenant would import a consideration, yet if it stood alone, unsupported by any other circumstances, it would be difficult, on principle, to sustain an action on it, when it was proven that, in truth, there was no consideration ; yet, when coupled with the attendant circumstances in this case, we believe that it can be sustained. It is true, that, at the time of the covenant, it does not appear that Jacob Burleson had any land, as his headright land, to exchange with the defendant ; but, by the laws in force, he had the capacity to acquire such right, and the defendant covenanted to convey, on the prospective right of Jacob Burleson to headright land ; and this prospective right was afterwards realized, when he located the headright of Jacob Burleson, procured the patent for the same, and claimed the one-half

Burleson v. Burlesen.

thereof in lieu of the half of his own headright. It must be remembered, too, that the defendant had the selection of the land on which the headright of Jacob Burleson was laid, and cannot complain that a bad selection was made. It will not avail the defendant, that the legal title to the one-half of Jacob Burleson's, had not been conveyed to him. Because, it was in his power to acquire it, under an order or decree of the Court, at any time after the land had been patented. [Again, the defendant, by permitting Jacob Burleson to take possession and improve the land, and to continue in possession during his life, and his heirs after his death, has precluded himself from denying that it was for a good consideration.] After such a lapse of time, of continued possession and improvement, a good consideration would be presumed, to quiet the possession of the heirs of Jacob Burleson. A party, permitting such possession so acquired and improvements made, raises an equity against him, that will override his legal title. Such facts amount to a ratification of the covenant, and it is too late to say that it is not supported by a good consideration. Had there been no covenant shown, these facts would have raised a presumption of a title, to support the possession. (Lewis v. San Antonio, 7 Tex. R. 288.)

We believe that the petition and the amendments show good grounds for the relief sought, and that the Court below erred in sustaining the demurrer. The judgment is reversed and the cause remanded.

Reversed and remanded.