## LEASELL HARRIS AND OTHERS V. HARDEMAN AND OTHERS.

Where a colonist who had received a title for his headright in 1831, on the 17th of March, 1835, conveyed the same, encumbered with a condition that the grantee should convey a certain quantity thereof in compliance with the vendor's previous covenant, dated in 1831, to a third person, and the vendee conveyed accordingly, it was held that the conveyances were valid and passed the title to the land.

In order to vitiate a sale of community property by the husband, on the ground of fraud against the wife, the purchaser must be affected with notice of the fraudulent design.

The rule in Gautier v. Franklin, 1 Texas, 732, applied to a suit, by a party in possession, to annul a conveyance, on the ground of *lesion*.

See this case as to the statute of limitations where the father, having full title, conveys, and after his death his children take and retain possession, claiming as his heirs and denying any conveyance by him.

Appeal from Caldwell. The conveyance from Gillon to Bateman, recited that the bond of the former, to Mathews and McKean, was dated in 1831, and was for all of the league

except 1300 acres, and was in consideration of their paying all the fees and expenses on said league. In 1842, Bateman conveyed the lower half of the league to Mathews and McKean. One of the plaintiffs was the daughter of Gillon by Barbara, who was his wife at the date of the grant, and who was the mother of the other plaintiffs. The plaintiffs removed to and settled upon the upper half of the league in the Fall of 1846, claiming the land by virtue of the grant to Gillon. In 1847, the defendants, who claimed the lower half of the league under the conveyance from Bateman to Mathews and McKean, went into possession of that part of the league. The other defendants, being the heirs of Bateman, were never in possession. These are the defendants who reconvened, and in whose favor there was judgment for the recovery of the upper half of the league.

*I. A. & G. W. Paschal*, for appellants.

*Hamilton & Walton* and *Oldham & Terrell*, for appellees.

LIPSCOMB, J. A short statement of this case may be necessary to the better understanding the questions to be decided. Michael Gillon received a grant of a league of land as a colonist in De Witt's Colony, (the date of the issuance of the grant was the 22d day of June, 1831,) and on the 17th day of March, 1835, sold and conveyed the league of land to Simeon Bateman, encumbered with a condition that Bateman, the vendee, was to discharge a certain covenant that the vendor had previously entered into with Mathews and McKean, to convey a portion of the land. Gillon left his family in 1835 or 1836, went into the State of Louisiana, and died there in 1837, leaving a widow in Texas, who died in 1846. She had previously intermarried, and had two children by Votaw, who was her third husband. She had children by each of her husbands, living at her death. In 1846, she and her children settled on the

land that had been originally granted to her husband, Michael Gillon, and in 1853 this suit was brought by the heirs of Mrs. Votaw, the widow of Gillon, to set aside the conveyance made by Gillon to Bateman, on the ground of its being in violation of an express inhibition of law; secondly, it was in fraud of the wife's rights; and third, it was tainted with lesion; and the plaintiffs sought further to be quieted in their possession.

Some of the defendants, who claimed that portion of the league settled upon by the plaintiffs, reconvened, setting up their title and prayed a decree giving them possession and quieting their title; others, who were in possession, defended themselves on their title only. There was a verdict for all of the defendants, and for those who had reconvened, verdict in their favor on the reconvention; decrees were entered corresponding with the verdict, and plaintiffs appealed.

We do not intend to discuss all of the points made by the appellants, because it would be a useless labor to ourselves, and an unnecessary consumption of time. We will discuss the grounds on which the plaintiffs seek to set aside and vacate the deed of Gillon to Bateman. On the first ground, the supposed inhibition to sell the land granted to Gillon at the date of his sale to Bateman, we answer that before that sale was made, the inhibition had been removed, (see Burleson v. Burleson, 11 Texas, 2,) and there was nothing at that time to prevent Gillon from providing for the satisfaction of his covenant previously made with Mathews and McKean.

We will pass to the second ground, the fraud on the wife, to sell for the purpose of depriving her of her community in the land. Had he died without selling, she would have been entitled to the one-half, after paying the community debts. But there can be no doubt that the husband, as long as the matrimonial relation lasted, had a right to sell the community property, and there is no evidence that it was done to defraud his wife; and if such had been his design it would not affect the sale, unless it could be done without prejudicing innocent per-

sons thereby. There is no evidence that Bateman participated in the fraudulent intention of Gillon, if such were his intent. But the facts are not sufficient to predicate the charge that he sold with intent to defraud his wife, and would not be sufficient if given in evidence in a suit to enjoin him from selling to the prejudice of the wife's interest. There is no evidence of his profligacy in squandering the money for which the community property was sold, and the presumption is that it would be expended for the mutual benefit of their common family. The evidence is not sufficient to fix on the husband the charge of an abandonment of his family. The proof is that he left his family in Texas in thirty-five or thirty-six, and went into Louisiana, where he died in thirty-seven. The presumption is that he went on business, and designed returning as soon as he had accomplished it. It is not an uncommon occurrence for the husband to be absent a longer period of time without incurring the slightest suspicion of an intention of abandoning his family.

The alleged lesion, whatever may have been its design, cannot be sustained at this late day. Gillon lived some two years after the contract had been made, without setting up any inadequacy of price, or asking a rescission of his contract. The limitation had commenced running in his life-time, and his death did not stop its running. Seventeen years had elapsed from the date of the sale before this suit was brought, and if the lesion is to be regarded as most enormous, under the old law it was barred in twenty years. It had run something more than one-third of the time at the date of our statute of limitations, and according to the rule applied in Gautier v. Franklin, 1 Texas, 732, to the running of the new statute, the bar was completed some seven or eight years before this suit was commenced, and there was no error in refusing to admit proof to establish the lesion, because if enormous it was barred in four years, and if most enormous, it was barred as we have seen ; and no evidence of lesion, no matter of what grade, could be of any consequence or materiality and was properly excluded.

The possession, to sustain the title of the plaintiffs under the statute and entitle them to have their title quieted, must have been under a claim by deed or deeds duly registered. The plaintiffs showed no paper title in them or either of them, and their possession was a naked possession, unaccompanied by or with title. It was a possession that if it had continued ten years would have made title for six hundred and forty acres of the possession. There is nothing in the ancient Common Law rule that actual seizin under the deed from Gillon to Bateman was essential to the validity of Bateman's title. The English doctrine of seizin was hardly ever regarded as being in force in the United States, more especially not in the new and the Western States. At an early day after the Revolution it was declared in Pennsylvania not to be the law ; that actual seizin was not necessary, but that the constructive seizin that accompanied the title, was sufficient. (See Horton v. Crawford, 10 Texas, 382.) We find no error in the record and the judgment is affirmed.

Judgment affirmed.