## W. T. SMITHEAL ET AL. V. MORTIMER SMITH ET AL.

### No. 837.

1. **Husband and Wife—Community Estate, Conveyance in Fraud of.**—Community property may be the subject of fraudulent conveyance by the husband against the interest of the estate of the wife.

2. **Evidence—Other Fraudulent Transactions.**—In a suit to set aside a fraudulent conveyance by the husband of community property, evidence is admissible to show want of fair dealing by the husband with respect to other property of the wife.

3. **Evidence—Res Gestæ—Execution of Deed.**—A deed was dated 16th May, 1890, and acknowledged 14th August, 1890, and it being pertinent to show that it was in fact signed about the time it purported to have been signed, the statement of the grantor, who had in his hand a paper having the appearance of a deed, and who was then in search of a notary, that the paper held in his hand was a deed from him to the grantee to the property in question, was admissible in evidence.

4. **Disclaimer—Party to Suit.**—The grantor being a proper party to the suit, can not disclaim in an action against him to set aside the conveyance as fraudulent.

APPEAL from Grimes. Tried below before Hon. J. M. SMITHER.

*H. H. Boone,* for appellants.—1. Under our statutes, during coverture the community property may be disposed of by the husband only, yet this means a lawful disposition only; and one made with intent to defraud the wife would be void, and she would be entitled to her action to recover it, and this right of action would survive to her heirs or devisees. Const. of the Rep., sec. 1; 4 Sayles' Civ. Stats., art. 166; Burr v. Wilson, 18 Texas, 370; Rev. Stats., art. 2852; Carroll v. Carroll, 20 Texas, 744; Taylor v. Duncan, Dall., 516; Scott v. Maynard, Id., 551; Munsen v. Hollowell, 26 Texas, 481; Wright v. Hays, 10 Texas, 133; Stamler v. Coe, 15 Texas, 215, 216; Harris v. Hardeman, 15 Texas, 466; 3 Am. and Eng. Encyc. of Law, sec. 2, p. 354, and notes; Smith v. Smith, 12 Cal., 216; 73 Am. Dec., 533, and notes; 1 Pom. Eq. Jur., sec. 503; Thayer v. Thayer, 14 Vt., 107; 39 Am. Dec., 211, and notes; Succession of Packwood, 24 Am. Rep., 740.

2. The intent of the transfer of the property in controversy by P. A. Smith to his brother, Mortimer Smith, was relevant, and other fraudulent acts of P. A. Smith, committed about the same time, or with property of the same character, with supposed similar motives, are admissible in evidence. Thompson v. Shannon, 9 Texas, 536; Weisiger v. Chisholm, 28 Texas, 790; Day v. Stone, 59 Texas, 612; Burch v. Smith, 15 Texas, 219; Hunter, Evans & Co. v. Lanius, 82 Texas, 684; Hoxie v. Ins. Co., 32 Conn., 21; 85 Am. Dec., 242; Davis v. Calvert, 25 Am. Dec., 293; Hall v. Naylor, 75 Am. Dec., 269; Lincoln v. Claftin, 74 U. S., 132–134; Butler v. Watkins, 80 U. S., 456–475.

3. A party to a suit can not on his own direct examination, or on that of one of his witnesses, give in evidence his own declarations made to third persons in regard to particular facts in issue, when the adverse party was not present. Moody & Jamison v. Gardner, 42 Texas, 411; Willis v. Gay, 48 Texas, 463; Wallace v. Berry, 83 Texas, 328.

*A. C. Brietz,* for appellees.

GARRETT, CHIEF JUSTICE.—This action was brought in the District Court of Grimes County on May 12, 1891, by W. T. Smitheal, his wife, Mary L. Smitheal, Eliza Jane Peterson, Margaret Ann Fisher, and J. J. Creagor, as the executor and devisees of Louisa Smith, deceased, against Mortimer Smith and Philip A. Smith, to set aside a deed of conveyance executed by the said Philip A. Smith, who was the surviving husband of said Louisa Smith, to said Mortimer Smith during the last illness of said Louisa, for blocks 7 and 12, Noland's addition to the town of Navasota, Grimes County, Texas, belonging to the community estate of said P. A. and Louisa Smith, which they alleged had been executed either without consideration or a grossly inadequate consideration, with the intent to cheat and defraud the said Louisa Smith and her estate and heirs out of their interest in said property, and to recover one-half of said property and rents, with prayer for partition. The defendant P. A. Smith filed a disclaimer of any interest whatever in said premises. Mortimer Smith pleaded misjoinder of parties demurred to the petition, and also pleaded not guilty, and a general denial. The demurrers were overruled by the court and the case went to the jury, which returned a verdict for the defendants.

Louisa Smith and P. A. Smith, were married in 1868. At that time she was a widow Lofton, but had previously been married to one Creagor, who was the father of the plaintiffs Mary L. Smitheal, Eliza Jane Peterson, Margaret Ann Fisher, and J. J. Creagor. When she married Smith she was the owner of considerable property, much more than he had. She died September 7, 1890, leaving a will, with W. T. Smitheal as executor, and the other plaintiffs as devisees of her estate. The deed to Mortimer Smith was dated May 16, 1890; it was signed by P. A. Smith alone, and was acknowledged by him August 14, 1890, before J. E. Teague, a notary public, who had died before the trial, and was filed for record August 15, 1890. Mortimer Smith is a brother of P. A. Smith; and came to Navasota in 1881, in poor circumstances. He had a wife and two children, whom he left at his old home for about a year, when they came also. He went to work for his brother at a small salary about a hotel, which the latter was running; and afterwards took charge for him of a furniture business, in which it was shown that his services were worth from $900 to $1000 a year.

The defense relied on was, that the conveyance was made in good faith for a valuable consideration, in pursuance of a parol contract followed by possession, improvements, and payment of purchase money, long before the date of the execution of the deed. Both of the Smiths testified, that P. A. Smith bought the property in the year 1881 from one Gabert for $2250; that about that time he agreed with Mortimer Smith to sell it to him at the same price; that he would advance money for the repair of the property and pay the taxes, and when the services of Mortimer and the rents amounted to enough to repay P. A. Smith,

he would then convey the property to him. Mortimer moved upon the premises in 1882, and occupied one of the dwelling houses thereon ever afterwards; there was one other dwelling house thereon, and a stone building used for different purposes. They testified that Mortimer paid $500 in money received from the sale of property in New York, where he came from, and by 1887 the premises in controversy were fully paid for, but that P. A. Smith objected to making a deed then, because he was under bond as postmaster, from which he was not relieved until 1890. On the other hand, it was shown that P. A. Smith mortgaged the property as his own in 1881; that in 1886 he instituted a suit in his own name to enjoin the city of Navasota from opening a street on one side of it; that he paid taxes thereon; received the rents, and that the property was commonly known as his property until after the death of his wife. It also appeared that P. A. Smith had transferred to Mortimer a note for about $1800 belonging to the community estate, which they claimed was for his service rendered subsequent to 1887. There was also evidence tending to show that Mortimer consumed about all his services were worth in the support of his family. We have not undertaken to state all of the facts, but only enough of the facts and evidence to make our disposition of the several questions presented understood.

The first, second, and third errors assigned are upon the action of the court in excluding evidence, as set forth in the several bills of exception, to show what property the deceased Louisa Smith and the said P. A. Smith respectively had at the time of their marriage; what property had accumulated since their marriage, and what P. A. Smith had pointed out to her heirs after the death of his wife as community property; and that he rendered a statement to them after the death of his wife, with respect thereto, to the estate, in which he claimed, as his separate estate, property that was her separate property or belonged to the community estate. Defendants objected to this testimony, that it was irrelevant and immaterial, and that the statements referred to did not embrace the property involved in this suit, but property involved in another suit then pending between the plaintiffs and P. A. Smith. Evidence was admissible to show what property Smith and his wife had belonging to each of them when they married, and what community property they owned, and as bearing upon the question of Smith's fair dealing with his wife's property and the community estate, his statements about the character of the property conflicting with the true character thereof were admissible. If a want of fair dealing with respect to other property should be shown, it would be a circumstance tending to show that plaintiff's allegations were true, that the conveyance to Mortimer was made to defraud the community estate. This testimony should have all been admitted, especially when it is considered, that in cases of fraud a wide latitude is given to the admission of evidence.

J. H. Teague was permitted to testify in behalf of the defendants, over the objection of plaintiffs, that sometime in the spring of 1890, the defendant P. A. Smith came into the office of his father, J. E. Teague, a notary public, who was out at the time, having in his hand a paper that looked like a deed, and inquired for his father, stating that the paper he held in his hand was a deed to the property in controversy to his brother, Mortimer Smith, which he wished to acknowledge. In view of the fact that the acknowledgment of the deed was not made until August 14, shortly before the death of the wife, and during her last illness, it became pertinent to show in rebuttal that the deed was in fact signed about the time it purported to have been signed. This statement of Smith was made sometime before the illness of his wife, and it is charged and relied on as a potent circumstance to show fraud in the conveyance, that it was made during Mrs. Smith's last illness. Under the circumstances the statement was admissible. Lewy v. Fischl, 65 Texas, 318. For the same reason the evidence of Kilhan was properly received, that P. A. Smith told him in 1885 or 1886 that he had bought the property for Mortimer, who was paying for it, according to agreement, in rents, services, and money, and that he would soon give him a deed for it. This testimony was admissible for the further reason that it was a disserving declaration.

There is nothing in the charge of the court that appellants can complain of; but the appellees might well complain of the instruction of the court to the jury, that the conveyance would be void as to a one-half interest therein if the defendant P. A. Smith conveyed the premises to him with the intention to defraud or prejudice the community interest of his wife, Louisa Smith, for Mortimer Smith would not be affected by the secret intention of P. A. Smith if he was himself a purchaser in good faith. Some of the decisions use the expression, to defraud or prejudice the community, but the word prejudice must be understood in some sense as defraud. It is well recognized in this State and elsewhere, that the community property of the husband and wife may be the subject of fraudulent conveyance by the husband as against the interest of the estate of the wife.

Appellants complain of the giving of the following special instructions, which was error: "Defendant P. A. Smith asks the court to charge the jury, that said defendant having filed his disclaimer herein, if they shall find from the evidence that since the 10th day of May, A. D. 1890, said P. A. Smith has not been in possession of any part of said premises, or claimed any interest therein, or collected any rents from said premises, or otherwise had anything to do with said premises, they will find for the defendant P. A. Smith." P. A. Smith could not disclaim in a suit against him to set aside the conveyance as fraudulent. He was a proper party to the suit.

"Defendants ask the court to charge the jury, that P. A. Smith, the husband of Louisa Smith, during her coverture, had the right to make reasonable gifts in good faith to the children of said Louisa Smith or

to the brother of said P. A. Smith, if the community estate was not thereby diminished to such an extent as to deprive the said Louisa Smith of her fair share of such community property, and of a maintenance suitable to the rank and station of the said Louisa Smith in society and in life." There was no evidence to authorize the giving of an instruction touching the right of P. A. Smith to make a gift or donation to his brother.

We find no error in any of the remaining special instructions given, except that some were repetitions of the charge already given, which is objectionable.

For the errors pointed out, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered May 9, 1895.