RAGLEY–McWILLIAMS LUMBER CO. v. DAVIDSON et al. (No. 6944.)

(Court of Civil Appeals of Texas. Galveston. June 8, 1915.)

1. TRESPASS TO TRY TITLE ⏧38—ACTIONS—BURDEN OF PROOF.

In trespass to try title, where defendant has shown title to the land involved by a regular chain of transfers from the sovereignty of the soil down to itself, plaintiffs who attack such title have the burden of proof.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 53; Dec. Dig. ⏧ 38.]

2. HOMESTEAD ⏧57 — VENDOR AND PURCHASER ⏧244 — COMMUNITY PROPERTY—CONVEYANCE BY HUSBAND—INVALIDITY.

In an action to recover land which a husband had conveyed without the consent of his wife, evidence *held* not to show that it was the homestead of the spouses, that the conveyance was a fraud on the rights of the wife, or that defendant had notice or knowledge of the fraud.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 83–85; Dec. Dig. ⏧57; Vendor and Purchaser, Cent. Dig. §§ 609–611; Dec. Dig. ⏧244.]

Appeal from District Court, Sabine County; A. E. Davis, Judge.

Action by J. O. Davidson and another against the Ragley-McWilliams Lumber Company. From a judgment for plaintiffs, defendant appeals. Reversed and rendered.

W. F. Goodrich, of Hemphill, for appellant. Hamilton & Hamilton and J. W. Minton, all of Hemphill, for appellees.

LANE, J. J. O. Davidson, H. C. Maund, and Rebecca Stone, joined pro forma by her husband, E. N. Stone, brought this suit in the district court of Sabine county in the year 1911, in the ordinary form of trespass to try title, against the Ragley-McWilliams Lumber Company, a corporation, to recover 200 acres of land described in their petition. The cause was then tried, and resulted in a judgment being rendered in favor of Mrs. Stone for an undivided interest of 50 acres of said land; in favor of J. O. Davidson and H. C. Maund jointly for an undivided interest of 50 acres of same; and in favor of Ragley-McWilliams Lumber Company for an undivided interest of 100 acres therein. The Ragley-McWilliams Lumber Company appealed from so much of said judgment as was in favor of Davidson and Maund, but no appeal was taken from the judgment in favor of Mrs. Stone, and the same was affirmed and made final by this court on a former appeal of this case, reported in 152 S. W. 856. But so much of said judgment as was in favor of Davidson and Maund was on said appeal reversed, and that part of the suit was remanded for a new trial. Therefore the only issue before the court, at the trial from which this appeal is taken, was as to the title to the 50 acres claimed by Davidson and Maund, and the Stones were practically no longer in the case. The last trial was had upon the petition and answer upon which the first trial was had; appellees' petition being in the ordinary form of trespass to try title to the said 200 acres of land, and appellant's answer consisting of a plea of not guilty only. The case was tried before a jury upon special issues submitted by the court as follows:

"Question No. 1. Did Joe Meely Cosgrove and his wife, Rebecca Cosgrove, purchase the 200 acres of land described in plaintiff's petition for a homestead, and by the act of them or either of them designated said 200-acre tract of land as their homestead? Answer this question 'yes' or 'no.'

"Question No. 2. Did Rebecca Cosgrove, since she and her husband purchased the 200-acre tract of land described in plaintiff's petition, live on said land? Answer 'yes' or 'no.'

"Question No. 3. Did Rebecca Cosgrove, now Rebecca Stone, after living upon said land, if she did live upon said land, leave said land, if she left it, with the intention not to return to said land and live upon it as her homestead? Answer 'yes' or 'no.'"

Upon these instructions the jury returned their verdict, as follows:

"We, the jury, answer the questions propounded to us by the court as follows: To question No. 1, we answer, yes. To question No. 2, we answer, yes. To question No. 3, we answer, no."

---

⏧For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Upon motion of plaintiffs J. O. Davidson and H. C. Maund, the court rendered judgment upon said verdict in favor of said Davidson and Maund against defendant Ragley-McWilliams Lumber Company, for an undivided interest of 50 acres in the land in question, and for all costs of suit, and further adjudged that Rebecca Stone and husband, E. N. Stone, take nothing by their suit. From this judgment the Ragley-McWilliams Lumber Company have appealed.

While appellant has assigned several errors, practically the substance of all of them is that there was no evidence to support the judgment rendered. Therefore we shall not undertake to consider and dispose of the assignments in the order they are presented in appellant's brief, but will consider and dispose of them together as one assignment.

The undisputed evidence shows that Joe Meely Cosgrove and Rebecca Cosgrove, now Mrs. Stone, were married some time prior to 1891, and the 200 acres of land involved in this suit was purchased by them for a home in 1891 and was the community property of said Cosgrove and wife. Shortly after the purchase of this land, for some reason not made entirely clear, Cosgrove left his wife and was gone six or eight months, at the end of which time he returned and asked his wife to live with him. She refused to live with him, giving as her reason for refusing that he was drunk and did not know what he was talking about. At this time Mrs. Cosgrove was living with her father, a Mr. Perkins, upon whom she partly depended for a support for herself and her two children. As Cosgrove did not contribute to their support, she moved with her father from Sabine county, where her husband was, to San Augustine county, and lived there about five years. After she had so resided in San Augustine county for four or five years, her husband, Cosgrove, came to her in that county and asked her to live with him. She agreed to do so, and lived with him for about two or three months; this was in 1897 or 1898. While they were so living together, Cosgrove got from his wife the deed to the land in question and went back to Sabine county without assigning any reason for so doing. Some time after he left the last time, Mrs. Cosgrove brought suit against him for a divorce; but no process was ever served upon him, and no divorce granted. About two years after Cosgrove left his wife in San Augustine county in 1897 or 1898, and while he was still living, she married one E. N. Stone. She and Stone bought a place in San Augustine county and lived thereon as their home, but did not pay for same and gave it up and bargained for another place and moved to and lived upon it, but have not paid for it. She testified that she never intended to permanently abandon the Cosgrove 200 acres of land as her home, but did intend at some time to return to and live on it as her home. The husband, Joe Meely Cosgrove,

the purchaser of said 200 acres of land in question, in 1903, some two years after his wife had married E. N. Stone, conveyed the same to J. D. La Brie. At the time La Brie bought, the fences and dwelling house formerly upon the place had either been removed or rotted down, and the little cleared field thereon had grown up in brush and trees, and there was nothing thereon to put one upon notice that it was a homestead. Some time after La Brie bought said 200 acres, he sold the same to the Ragley-McWilliams Lumber Company, appellants, who never knew Cosgrove nor Mrs. Cosgrove; never knew that there was such person as Rebecca Cosgrove or Rebecca Stone, nor of any claim by her to the land in question. It had its attorney pass on the title of La Brie to the land before it purchased, and this attorney informed it that the title was good. In other words, appellant Ragley-McWilliams Lumber Company had no notice whatever of any fact which would or could lead it to suspect that the land was being claimed by Mrs. Stone as her home, or that her former husband, of whom it knew nothing, intended to defraud her of her community interest in said land. Mrs. Stone was advised by one S. P. McElroy in 1904 or 1905 that her former husband, Cosgrove, had sold the land, and thereafter, in 1906, Mrs. Stone and husband, E. N. Stone, conveyed to J. O. Davidson and H. C. Maund the interest in the land for which they sue; the consideration therefor being their services in recovering 50 acres of same for them. It is further shown that Mrs. Stone never received any of the proceeds of the sale of land by Cosgrove to La Brie.

[1, 2] From the foregoing statement of facts we find that the 200 acres of land in question was the community property of Joe Meely Cosgrove and his wife, Rebecca, who later, before his death, and without being divorced, married E. N. Stone; that both Cosgrove and Mrs. Stone had abandoned the land as a home long before La Brie bought, she having married Stone before Cosgrove sold the land to La Brie; that at the time the Ragley-McWilliams Lumber Company bought the land from La Brie it had no notice or knowledge of the fraud, or any fact upon which such fraud as charged to have been practiced upon his wife by Cosgrove was based, if in fact such fraud existed; neither did it have any notice or knowledge that Cosgrove ever had a wife, or that he or his wife ever occupied or claimed said land purchased by it, as a homestead. We find nothing in the record to show that appellant had any such knowledge or notice, and before appellees can recover they must affirmatively show such facts.

The correctness of the judgment is assailed on the grounds of the insufficiency of the evidence to show: First, that the premises was a homestead when sold to La Brie; and, second, that if the sale was a fraud upon the

rights of the wife, appellant had no notice thereof at the time he bought from La Brie.

Upon a former appeal of this case, Judge Reese, in speaking for this court, in an opinion reported in 152 S. W. 856, says:

"(1) The land being community property of Cosgrove and wife, and no homestead rights being involved, Cosgrove had the right to dispose of the same by sale and conveyance without joinder by the wife. R. S. 2968. Under this general power to manage, control, and dispose of the community property, however, the husband would not be allowed to make such disposition of it as would be a fraud upon her rights as the owner of one-half of it. Smitheal v. Smith, 10 Tex. Civ. App. 446, 31 S. W. 422; Martin v. McAllister, 94 Tex. 567, 63 S. W. 624 [56 L. R. A. 585]; Purdom v. Boyd, 82 Tex. 130, 17 S. W. 606; Moody v. Smoot, 78 Tex. 123, 14 S. W. 285.

"(2) This power of control and disposition continues as long as the marriage relation is not dissolved in some legal way. What would be such a disposition of the property as would be set aside as in fraud of the rights of the wife it is not necessary clearly to define, if indeed it could be done; but it seems to us that the evidence in this record falls short of making such a case. Prima facie, the property being community and the marriage legally subsisting, the husband's deed is valid.

"(3) The burden would rest upon any one claiming otherwise to establish the circumstances relied upon to invalidate it.

"(4) The only fact so relied upon, as shown by this record, is that the parties were living apart, and had been separated for several years when the deed was made. This of itself did not deprive the husband of the power to convey, and cannot be held sufficient evidence that such conveyance was fraudulent. The deed being regular, the presumptions are in its favor, not against it.

"(5) Another fact necessary to be shown in order to authorize the court to set aside the deed is that it be made to appear that the parties adversely interested are not innocent purchasers. Harris v. Hardeman, 15 Tex. 468. Mrs. Cosgrove in attacking this deed would have the burden also as to this. The only evidence that squints in this direction in this record is the testimony of McElroy that everybody in the neighborhood knew that Cosgrove and his wife were separated, and that this was community property. If this fact was not sufficient to authorize the inference of fraud, in the conveyance, notice of this fact alone would not be sufficient to affect the purchaser with notice of Cosgrove's fraudulent intent in making the deed. We think the evidence fails totally on these points."

We think the evidence on the last trial, from which this appeal is taken, is very much the same as it was at the former trial, as shown by the statement made by Judge Reese in his opinion on the former appeal. Certainly it is no more favorable to appellees than it was on said former trial. Appellees at that trial wholly failed to show any title in themselves to the land sued for, or to show the invalidity of the title of appellants, and, as before said, we think the evidence on the last appeal was no more favorable to them than on the first. Appellant has shown title to the land involved by a regular chain of transfers from the sovereignty of the soil down to itself, and appellees, who have attacked such title, and up-

on whom the burden of proof rests, have wholly failed to show a better or superior title in themselves.

We think the trial court erred in rendering a verdict for appellees Davidson and Maund, and in not instructing a verdict for the appellant, and, so believing, we here reverse the judgment of the court below and here render judgment for appellant.

Reversed and rendered.