NONA MILLS CO. et al. v. JACKSON et al.

(Court of Civil Appeals of Texas. Galveston. June 27, 1913. Rehearing Denied Oct. 9, 1913.)

1. TRESPASS TO TRY TITLE (§ 41*)—ACTIONS —EVIDENCE—SUFFICIENCY.

In trespass to try title evidence *held* sufficient to support a finding in plaintiff's favor and not to necessitate a finding in favor of defendant.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. § 41.*]

2. TRESPASS TO TRY TITLE (§ 41*)—WEIGHT AND SUFFICIENCY.

In trespass to try title, where both parties claimed under a location made under a certificate which concededly belonged to plaintiffs' ancestor at one time, plaintiffs' long acquiescence in the claim of defendants is not entitled to much weight where there was nothing to show that they knew that their ancestor ever owned the certificate under which the land was located; it appearing that it was not recorded in the county and had not been issued directly to him.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. § 41.*]

3. TENANCY IN COMMON (§ 55*)—RIGHTS OF TENANTS IN COMMON.

While one tenant in common is, as against a trespasser, entitled to the possession of the entire tract, a single tenant cannot, where the fee is injured, recover more than that portion of the damages to which his interest entitles him.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 140–156; Dec. Dig. § 55.*]

4. APPEAL AND ERROR (§ 1172*)—DETERMINATION OF CASE—REVERSAL.

Under Court Rule 62a (149 S. W. x), providing that if an error affects part only of the matter in controversy and the issues are severable the judgment shall be reversed and a new trial ordered only as to that part corrected, the whole judgment in trespass to try title brought by only part of the tenants in common, wherein damages for the cutting of timber were also recovered, will not be reversed, but only that part which improperly awarded the entire damages to plaintiffs.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4555–4561; Dec. Dig. § 1172.*]

Appeal from District Court, Hardin County; L. B. Hightower, Judge.

Trespass to try title by Ambrose Jackson and others against the Nona Mills Company and another. From a judgment for plaintiffs, defendants appeal. Affirmed in part, and in part reversed and remanded, with instructions.

Greer & Minor, of Beaumont, Sleeper, Boynton & Kendall, of Waco, and Singleton & Nall, of Kountze, for appellants. Jno. L. Little, of Kountze, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title and for damages brought by the appellees against the appellants. The land in controversy is a tract of 220 acres in Hardin county patented to Cor-

bet Stevens. The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiffs against the defendants Nona Mills Company and Wm. Cameron & Co. for the title and possession of the land, and against the defendant Wm. Cameron & Co. for the sum of $1,600, the value found by the jury of the timber cut from the land by said defendant.

The record discloses that the original certificate by virtue of which the land was patented was a bounty warrant for 320 acres issued by the Secretary of War for the republic of Texas to Corbet Stevens on December 11, 1837. This certificate, which is now in the Land Office, has indorsed thereon transfers from Corbet Stevens to Wm. Daniel, from Wm. Daniel to Wm. H. Sewall, and from Wm. H. Sewall to Thomas Hughes. The transfer to Hughes bears date August 25, 1838. One of the witnesses to this transfer, John P. Wilds, proved it for record before G. W. O'Brien, county clerk of Liberty county, on December 14, 1858. The certificate, as shown by file marks thereon, was filed in the Land Office on February 9, 1860, and again on December 31, 1874. It was first located in Liberty county in 1856 on two tracts of land, one containing 220 and the other 100 acres. These locations were void because made on titled land.

Thomas Hughes died in 1851, and his estate was administered by John P. Wilds, who was his father-in-law. The inventory of Hughes' estate, which was filed on October 27, 1851, contains the following list of lands and land claims belonging to said estate:

| | |
|---|---|
| Half league land | $350 00 |
| One land certificate for 1,000 acres.. | 50 00 |
| One land certificate for 1,000 acres... | 50 00 |
| One labor of land | 20 00 |
| One labor of land in Jefferson county | 20 00 |
| The chance for 200 acres land | 20 00 |
| The chance for 320 acres land | 20 00 |
| The chance for 640 acres land | 30 00 |

In October, November, and December, 1870, J. N. Dark, who had married a niece of John P. Wilds, and who lived near to and was intimately acquainted with Wilds and his daughter, the widow of Thomas Hughes, published for 60 days in the Liberty Observer, a weekly newspaper published at Liberty, Tex., a notice of the loss of the Corbet Stevens 320-acre certificate, and of his intention to apply for a duplicate of said certificate. In January 1871, Dark made affidavit of his ownership of said certificate, and its loss. On February 22, 1871, the land commissioner issued and forwarded to Dark a duplicate certificate; the fee for said certificate having been paid by Dark. The land in question was surveyed on July 10, 1873, and patent issued on May 1, 1874. On September 29, 1874, Dark conveyed the land to S. E. Parker, and through mesne conveyances this title became vested in appel-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

lant Nona Mills Company on October 29, 1886. On December 31, 1874, the original certificate was returned to the Land Office by W. C. Snider, county surveyor of Harrison county, together with the field notes of a location in Harrison county, which purported to have been made for Thomas Hughes, assignee of Corbet Stevens, on July 10, 1874. These are the only field notes in the Land Office of any location made under this certificate. The indorsements on the wrapper of the file of the Harrison county location shows that the location was canceled by the Land Office because the duplicate certificate had been issued and land located and patented thereunder. Sarah Hughes, the widow of Thomas Hughes, married the second time. Her second husband died in 1864, after which she lived with her father, John P. Wilds, at Sour Lake until his death in 1871. After her father's death she continued to live at his home until her death in 1872. Dark and those who have claimed under him have paid taxes on the land continuously since 1875, and their assertion of ownership has been open and continuous. The appellees are heirs of Thomas and Sarah Hughes. Several of them are children of said Thomas and Sarah and have lived in the vicinity of the land all their lives, and none of them ever asserted any claim to the land until shortly before this suit was filed.

[1, 2] Under appropriate assignments of error appellants assail the verdict on the ground that it is unsupported by the evidence in that "the undisputed facts and circumstances in evidence show that J. N. Dark, under whom these defendants claim title to the land in controversy, was the owner of the certificate by virtue of which the land was granted, and the facts and circumstances in evidence showing such ownership of said J. N. Dark are so cogent and persuasive that a reasonable mind could reach but one conclusion therefrom, to wit, that said J. N. Dark had acquired the title to said certificate." While the circumstances shown by the evidence are sufficient to authorize the finding that Dark was the owner of the certificate, they do not require such finding. The long acquiescence of the heirs of Thomas Hughes in the claim of those holding under Dark is not entitled to much weight for the reason that there is nothing in the record to indicate that the children of Thomas Hughes or any of the plaintiffs in this suit knew that Thomas Hughes ever owned the certificate upon which the land was located. The certificate was not issued to Hughes and there was no record in Hardin county showing the transfer to him. Such being the facts, the long acquiescence of Hughes' heirs in the claim of the land by those holding under Dark was probably due to the fact that they did not know that their ancestor ever owned the certificate, and not to any knowledge or belief on their part that his title to the certificate had passed to Dark. The circumstances shown by the evidence are not conclusive of the fact that either John P. Wilds, the administrator of the estate of Thomas Hughes, or Sarah Hughes, his widow, knew of the claim of Dark to the certificate. His affidavit of ownership and loss of the certificate upon which the duplicate was issued was not made until January, 1871. This affidavit was filed in the Land Office, and it is not improbable that Wilds, who died during that year, and Mrs. Hughes, who died in 1872, knew nothing of such affidavit or of the notice of loss of the certificate which was published in the Liberty Observer in the fall of 1870. The land was not surveyed under the Dark claim until 1873, and was not patented until 1874. We do not think these facts compel the finding that Wilds or Mrs. Hughes had knowledge of Dark's claim. The assignments complaining of the verdict on the grounds stated cannot be sustained.

[3] Complaint is also made of the judgment in favor of plaintiffs for the $1,600 found by the jury to be the value of the timber taken from the land by the appellant Wm. Cameron & Co., on the ground that the evidence shows that plaintiffs are not all of the heirs of Thomas Hughes and fails to show definitely what interest in the property is owned by plaintiffs. We think the assignments presenting this complaint should be sustained. As tenants in common with the other heirs of Thomas Hughes who are not parties to this suit, plaintiffs were entitled to recover against the defendants, who had no title, the title and possession of all of the land; but they could only recover that portion of the damages to which their interest in the land entitled them. The evidence shows that they are not entitled to recover all of such damages, and fails to show what portion thereof belongs to them.

[4] The judgment of the court in favor of the plaintiffs for the land in controversy and that portion of the judgment fixing the damages at $1,600 is affirmed. That portion of the judgment awarding plaintiffs $1,600 found by the jury to be the value of the timber taken from the land is reversed, and the cause remanded to the court below with instructions to hear evidence upon the question of what interest in said sum belongs to plaintiffs and give judgment accordingly. Rule 62a (149 S. W. x).

Affirmed in part. Reversed and remanded in part, with instructions.